UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 11-70978

DELBERT SLAYTON, SR.,                                     Chapter 7

and                                                       Judge Thomas J. Tucker

GLORY DENISE SLAYTON,

        Debtors.
_____/

**OPINION REGARDING MOTIONS FOR RELIEF
FROM THE COURT'S AUGUST 28, 2013 ORDER**

This case is before the Court on the motions by Hewitt Associates, LLC ("Hewitt") and by Chrysler Group LLC – UAW Pension Plan (the "Pension Plan")(Docket ## 98, 106, collectively, the "Motions"), each seeking relief from the Court's August 28, 2013 Order (Docket # 87, the "August 28 Order"). The Debtors objected to each of the Motions. The Court held a hearing on the Motions on January 8, 2014. For the reasons stated in this opinion, the Court will grant both Motions.

    **A. The August 28 Order is subject to attack under Fed.R.Civ.P. 60(b)(1) and/or 60(b)(6) because Debtors did not properly serve either Hewitt or the Pension Plan with their motion that led to the August 28 Order**.

The Court agrees with the argument by Hewitt and the Pension Plan that the Debtors' motion, and 14-day notice of the motion, that led to the August 28 Order, were not properly served on either Hewitt or the Pension Plan. Debtors' motion and 14-day notice, each filed August 5, 2013 (Docket # 85), were served by Debtors' counsel by first class mail, addressed only to:

>       Chrysler Benefit Express
>       Attn: Bankruptcy Dept.
>       100 Half Day Road
>       Lincolnshire, IL 60069[1]

It is undisputed that "Chrysler Benefit Express," and the Illinois address above, are a name and address under which Hewitt operates a call center as servicer for the Pension Plan. But service to this name and address by Debtors' counsel was not proper service on Hewitt, because it did not meet the service requirements under the applicable rules, namely Fed.R.Bankr.P. 9014(b), 7004; and Fed.R.Civ.P. 4.

It was not proper service on Hewitt, because it was not service by mailing "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed.R.Bankr.P. 7004(b)(3). Nor was it a mailing to "the entity upon whom service is prescribed to be served by any statute of the United States or by the law of the state in which service is made," or "to an agent of such [party] authorized by appointment or by law to receive service of process," within the meaning of Fed.R.Bankr.P. 7004(b)(7) and 7004(b)(8). Nor was Debtors' service proper under Fed.R.Civ.P. 4. That is because service was not made on Hewitt in a manner permitted by Fed.R.Civ.P. 4(h), which requires service either in the manner permitted by state law (here, Michigan law, which in this case means MCR 2.105(D)),[2] or by delivery to "an officer, a managing or general agent, or

---

[1] Certificate of Service (Docket # 85, pdf page 4).

[2] MCR 2.105(D) states:

> Service of process on a domestic or foreign corporation may be made by
>
> (1) serving a summons and a copy of the complaint **on an officer or the resident agent**;

2

any other agent authorized by appointment or by law to receive service of process . . . ." Fed.R.Civ.P. 4(h)(1)(B).

Service in compliance with Fed.R.Bankr.P. 7004 or Fed.R.Civ.P. 4 was necessary in order to establish personal jurisdiction over Hewitt and the Pension Plan. *See* Fed.R.Bankr.P. 7004(f).

Thus, Debtors' attempted service of their motion and 14-day notice on Hewitt was insufficient, and therefore ineffective. And as a result, even if Hewitt could be viewed as an agent of the Pension Plan for service purposes, the Debtors did not obtain proper service on the Pension Plan either.

---

(2) serving a summons and a copy of the complaint **on a director, trustee, or person in charge of an office or business establishment of the corporation and sending a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation**;

(3) serving a summons and a copy of the complaint on the last presiding officer, president, cashier, secretary, or treasurer of a corporation that has ceased to do business by failing to keep up its organization by the appointment of officers or otherwise, or whose term of existence has expired;

(4) sending a summons and a copy of the complaint by registered mail to the corporation or an appropriate corporation officer and to the Michigan Bureau of Commercial Services, Corporation Division if

(a) the corporation has failed to appoint and maintain a resident agent or to file a certificate of that appointment as required by law;

(b) the corporation has failed to keep up its organization by the appointment of officers or otherwise; or

(c) the corporation's term of existence has expired.

(emphasis added).

For these reasons, the August 28 Order, which was entered by default, should be vacated under Fed.R.Civ.P. 60(b)(1)(on grounds of "excusable neglect"), *see Davis v. Bank of New York*, No. 06-12534, 2008 WL 793589, at *1 (E.D. Mich. March 18, 2008)("Improper service is certainly a reason for excusable neglect."), or alternatively, under Fed.R.Civ.P. 60(b)(6)("any other reason that justifies relief").[3] *See generally Wilson v. Cassidy* (*In re Cassidy*), 273 B.R. 531, 537 (Bankr. N.D. Ohio 2002)(citing *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001))(relief is available under Rule 60(b)(6) "'in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of [Rule 60(b)].'")(citations omitted).

**B. The August 28 Order is erroneous, because the Pension Plan has a right of recoupment that was not discharged in Debtors' bankruptcy case.**

It is undisputed that the Debtor Delbert Slayton, Sr.'s (the "Debtor's") monthly pension benefit from the Pension Plan consists of the sum of a basic monthly benefit (referred to in this opinion as the "Basic Pension Benefit"), plus the early retirement supplemental benefit (referred to in this opinion as the "Supplemental Benefit"). The Debtor was paid this monthly pension benefit through November 2012. As of November 2012, the Debtor's Basic Pension Benefit was $942.43 per month, and his Supplemental Benefit was $2,131.40 per month. The net monthly payment that the Debtor received from the Pension Plan was comprised of the total of these two amounts, less certain withholdings, and was paid in a single monthly net payment of $2,889.09 per month.[4]

---

[3] Fed.R.Bankr.P. 9024 makes Fed.R.Civ.P. 60(b) applicable in bankruptcy cases.

[4] *See* Ex. A to Docket # 108.

4

It is also undisputed that each month during the time period October 1, 2009 through November 30, 2012, the Debtor was overpaid by the Pension Plan, by the amount of $1,524.00 per month, for a total net overpayment of $57,912.00. The overpayment resulted from the fact that under the terms of the Pension Plan, the Debtor's Supplemental Benefit had to be reduced each month due to the Debtor's eligibility for and receipt of social security benefits during the time period described above. The Pension Plan did not become aware of the Debtor's award of social security benefits until October 2012.

It is further undisputed that effective with the December 2012 monthly pension benefit, the Pension Plan suspended payment of any pension benefit under the Pension Plan to the Debtor, in order to recover the pension overpayment that had been made to the Debtor. The result is that the Debtor has not received any pension benefit from the Pension Plan from December 2012 through the present, and is not scheduled to resume receiving any pension benefit until February 2016, after the overpayment is fully recovered.[5]

In one of his briefs, and during the hearing on the Motions, the Debtor's attorney conceded that the Pension Plan has a right to withhold payment of any of the Debtor's monthly Supplemental Benefit (in the gross amount of $2,131.40 per month), in order to recover the overpayment, and that the Plan's action in doing this is not a violation of the discharge injunction under 11 U.S.C. § 524(a).[6] And Debtor's attorney acknowledged during the hearing that the August 28 Order must, at a minimum, be modified to reflect this.

---

[5] Chrysler Social Security Benefit Amendment Statement dated 11-25-12 (Docket # 115, Ex. 1).

[6] The Debtor made this concession in his brief filed on December 16, 2013 (Docket # 108, Br. at unnumbered p. 6 (pdf p.8)).

But Debtor contends that the Pension Plan's withholding of his monthly Basic Pension Benefit (in the gross amount of $942.43 per month) is a violation of the discharge injunction. Debtor contends that the Pension Plan's withholding of this benefit is an improper effort to collect on a pre-petition debt that was discharged in the Debtor's Chapter 7 bankruptcy case. Specifically, the Debtor argues (1) that the Pension Plan has no valid legal right in the first place, to recover the overpayment by withholding from Debtor's Basic Pension Benefit; and (2) that even if the Pension Plan has such an otherwise valid legal right, that right at most is a right of set-off, rather than a right of recoupment. As such, Debtor argues, such right was a debt that was discharged in Debtor's Chapter 7 case.

The Pension Plan argues (1) that the Plan gives it the right to withhold from Debtor's Basic Pension Benefit, to recover the overpayment; and (2) that this right is a right of recoupment, which was neither discharged by the Debtor's Chapter 7 bankruptcy discharge, nor stayed by the § 362 automatic stay while the case was still open.

The Court concludes that the Pension Plan is correct on both points. First, the Pension Plan does have a valid legal right to withhold from Debtor's Basic Pension Benefit in order to recover the overpayment. The Plan documents give the Pension Plan that right.[7] Second, the Court concludes that such right is a right of recoupment, and therefore was not discharged.

The parties agree, correctly, that if the Plan's right to withhold the Basic Pension Benefit, in order to recover the Debtor's overpayment, is a right of recoupment, then such right of

---

[7] *See* Plan at 75-76, § 14A (copy at Docket # 106, Ex. E); September 27, 1999 Letter Agreement between DaimlerChrysler Corporation and Internation Union, UAW (Docket # 106, Ex. F); Chrysler Social Security Benefit Amendment Statement dated 11-25-12 (Docket # 115, Ex. 1); *see also* Plan at 42-43, § 10B (copy at Docket # 106, Ex. B).

recoupment was not discharged by the Debtor's bankruptcy discharge, and may still be exercised by the Pension Plan. *See In re Delicruz*, 300 B.R. 669, 679-81 (Bankr. E.D. Mich. 2003); *Brown v. General Motors Corp.*, 152 B.R. 935, 938-39 (W.D. Wis. 1993); *Thompson v. Bd. of Trustees of the Fairfax Cnty. Police Officers Retirement Sys. (In re Thompson)*, 182 B.R. 140, 146-48 (Bankr. E.D. Va. 1995). The parties further agree that it is a right of recoupment, rather than a mere right of set-off, *if* the Pension Plan's right to withhold the Basic Pension Benefit in order to recover the overpayment arises "from the same transaction," as the Debtor's right to the Basic Pension Benefit, rather than "from different transactions." *E.g., Delicruz*, 300 B.R. at 680 (citations omitted).

The Court concludes that the Pension Plan's right is a right of recoupment, because it arises from the "same transaction" as the Debtor's right to pension benefits, including both the Debtor's right to the Supplemental Benefit and the Debtor's right to the Basic Pension Benefit. All of these rights arise from the terms of the Pension Plan itself. Both components of the Debtor's pension benefit — the Basic Pension Benefit and the Supplemental Benefit — are part of a single pension benefit that the Debtor is entitled to under the Pension Plan, by virtue of his retirement, and both are to be paid by the Pension Plan. And it is that same Pension Plan whose terms and documents give the Pension Plan its right to withhold from both components of Debtor's pension benefit, in order to recover the pension overpayment that Debtor received.

For the reasons explained in the cases cited above, the Pension Plan's right of recoupment was not discharged by the Debtor's Chapter 7 discharge, but rather survives that discharge. Nor was the Pension Plan's exercise of that right of recoupment, while the bankruptcy case was originally pending, a violation of the automatic stay. As a result, the August 28 Order, which

7

precludes the Pension Plan's exercise of its right of recoupment, is erroneous and should be vacated under Fed.R.Civ.P. 60(b)(1) or, alternatively, under Fed.R.Civ.P. 60(b)(6).[8]

### C. Hewitt should be refunded the money it paid to Debtor and Debtors' counsel under the August 28 Order.

The August 28 Order required "creditor, Chrysler Benefit Express" to pay the Debtors $1,000.00 for "its willful violation of the automatic stay," and to pay Debtors' counsel $300.00 in attorney fees. The Order required that these payments be made "within 30 days after the date of entry of this Order." Understandably seeking to avoid the risk of being held in civil contempt of court if it did not pay these sums by the 30-day deadline in the Order, Hewitt paid $1,300.00 to Debtors and Debtors' counsel, before filing its Motion seeking relief from the August 28 Order. Now, as part of its Motion, Hewitt seeks an order requiring that it be repaid the $1,300.00. Debtors oppose that relief, and argue that Hewitt should seek reimbursement of the $1,300.00 it paid from the Pension Plan, for which it acts as a servicer.

Under the circumstances, and because the Court is vacating the August 28 Order, the Court will require Debtors and Debtors' counsel to return the $1,300.00 to Hewitt. The Court finds that it is equitable and appropriate to order this. And the Court has authority to order this. S*ee, e.g.*, *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1140-41 (C.D. Ca. 2010)("The right to recover what one has lost by the enforcement by a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before

---

[8] Debtor argued in his brief that Hewitt and the Pension Plan cannot obtain relief from the August 28 Order because of the doctrines of collateral estoppel and res judicata. But those doctrines do not bar relief from a judgment or order under Rule 60(b). *See, e.g.*, *Jordan v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974)(citation omitted)("[T]he doctrine of 'res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it.'"); *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir. 1985)(same).

the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.")(quoting *Baltimore & Ohio Railroad Co. v. United States*, 279 U.S. 781, 786, (1929)(other citations omitted); Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011).[9]

For the reasons stated above, Hewitt should never have been ordered to pay this money in the first place. And while Hewitt perhaps could have filed a motion for a stay of the August 28 Order's payment requirement, pending a ruling on its Rule 60(b) motion, *cf.* Fed.R.Civ.P. 62(b)(4), the August 28 Order's 30-day deadline for Hewitt to make the $1,300.00 payment was an unreasonably short time for Hewitt to prepare and file its Rule 60(b) motion and a stay motion, and obtain a ruling. And under Fed.R.Civ.P. 60(c)(2), Hewitt's mere filing of its Rule 60(b) motion "[did] not affect the judgment's finality or suspend its operation."

For these reasons, the Court will order the Debtors and their counsel to refund the $1,300.00 to Hewitt.

---

[9] The Restatement (Third) of Restitution and Unjust Enrichment states:

> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.

Restatement (Third) of Restitution and Unjust Enrichment § 18 (2011). This provision in the latest Restatement of Restitution (the Third Restatement) is consistent with the earlier version in the Restatement (First) of Restitution, which provided:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

Restatement (First) of Restitution § 74 (1937).

### D. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting the Motions of Hewitt and the Pension Plan.

**Signed on February 14, 2014**          **/s/ Thomas J. Tucker**
                                                    **Thomas J. Tucker**
                                                    **United States Bankruptcy Judge**